IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:21-cr-097 |
| | ) | |
| v. | ) | |
| | ) | DEFENDANT'S BRIEF IN SUPPORT OF |
| CHAD ALLEN WILLIAMS, | ) | PRETRIAL RELEASE TO VETERAN'S |
| | ) | ADMINISTRATION RESIDENTIAL |
| Defendant. | ) | FACILITY PROGRAM |

## FACTUAL ALLEGATIONS[1]

On May 12, 2021, at around 11:35 p.m., Ankeny police officers were dispatched to a residential address after the report of a loud explosion. The resident, Amanda Beason, reported she heard a car drive up the street, and then heard the explosion. Her home security camera footage showed a dark colored vehicle drive up the street, and a lit device drop from it, and fall to the middle of the street before exploding. The explosion was strong enough that it broke a piece of concrete from the roadway. A nearby parked car also sustained some superficial dust and debris damage from the blast.

On June 7, 2021, at around 12:49 a.m., Ankeny police officers were again dispatched to the same street on the report of an explosion. The caller, Brian Strable, reported seeing a large explosion outside his residence a few minutes before his call, and that he saw a large scorch mark in the street and paper remains from the explosive. Other neighbors confirmed hearing the explosion, and debris from the explosive was recovered from the scene. Camera footage showed a dark colored vehicle driving up the street, dropping a device from the driver's side

---

[1] The factual allegations noted in this brief come from the discovery materials provided by the government in the case.

window and into the middle of the street, and the device then explode a few moments later and send sparks of light like a firework or aerial mortar in all directions.

On June 9, 2021, Ankeny police officers responded again to the same neighborhood and recovered an undetonated explosive device from the middle of the street. Bomb technicians secured and examined the device, and found it to be a homemade explosive device containing screws, bolts, steel balls, and other shrapnel-type objections. The device was an automotive additive bottle containing the metal fragmentation materials, taped to two cylindrical fireworks with a fuse, and all wrapped in a cardboard box secured with black duct tape.

Subsequent investigation by the Ankeny Police and the Federal Bureau of Alcohol, Tobacco, and Firearms determined that Chad Williams had previously had a relationship with Amanda Beason. When asked about the relationship, Ms. Beason said that she and Mr. Williams had not had any direct contact since around February when the affair ended, but that he would sometimes send her messages and say "weird" things to her. She described their prior relationship as talking often, and hooking up sometimes, and noted that there was never an official end to the relationship – she just started ignoring him. She said Mr. Williams had never threatened her, but one time he pulled a gun on her ex-husband at a Walmart parking lot, after the ex-husband had followed her and Mr. Williams, and aggressively confronted them there. She noted that Mr. Williams had previously been in the Navy, and had worked for a delivery company.

When asked, Ms. Beason said she did not believe Mr. Williams was after her as some sort of revenge plot, replying that she had told him their relationship was "done." She said he had texted her saying he had sold his house and was getting a divorce, but that she looked up the

purchase on the Assessor website and learned he had purchased the new home with his wife, so she believed he was lying about the divorce. She believed Mr. Williams wanted to continue their relationship, and said she believed he would sometimes send her messages from different phone numbers. One of the phone numbers she provided to law enforcement officers matched a number associated with an anonymous tip about the explosions - that a male suspect living with Amanda Beason and her sister Ashley Richardson might be associated with the explosions. Ms. Beason said that Mr. Williams did not like that her sister's boyfriend, who had been in jail before, was staying at her house, and that he had sent her text messages with information about the boyfriend's past. Ms. Beason also later provided text messages where Mr. Williams appeared to be suggesting that he had had some contact with law enforcement about the explosions, implied she might have reported him as a suspect, and denied to her that he had any knowledge of the explosives until he googled it.

Further investigation of Mr. Williams showed that one of the vehicles registered to him and his wife was similar to the vehicle seen in the security camera footage from the explosions. In particular, an Iowa State University sticker on one of the vehicles matched a sticker seen on the vehicle in the security camera footage. A search warrant for Mr. Williams' residence was then obtained and executed on June 18, 2021, during which evidence was found that matched materials found in the undetonated device from June 9, 2021. Cylindrical firework shells with fuses, metal fragments, dark powder, suspected inert materials, fireworks labels, and a bag containing cardboard, a shell, and an oil container were located. Approximately a gram of methamphetamine, and some paraphernalia, were found in a safe in the basement, along with 64 rounds of assorted 9 mm ammunition and a loaded 9 mm pistol magazine. Approximately a

gram of marijuana was found in the garage, along with several small plastic bags with crystalline residue, and a glass pipe. Mr. Williams' permit to carry a firearm was found in a wallet in the basement.

Mr. Williams was interviewed for around two hours during execution of the search warrant. When asked about items found during the search, Mr. Williams said the drugs and paraphernalia found in the safe belonged to his sister, who had drug problems. He initially denied having anything to do with the explosions, but said he used fireworks around July 4th. He admitted having previously had an affair with Ms. Beason, that he missed her, and that he wanted to find a way to start things back up with her, but said she was largely non-responsive to messages he had sent her since the affair ended. He later said he was badly hurt because of the way the affair ended, because she had "ghosted" him and that he was placing the devices near her home because "of this convict that is living with her and her sister." He clarified that he did so because he was trying to damage a vehicle belonging to Ms. Beason's sister's boyfriend, who had moved in with Ms. Beason and her sister a few months prior. Mr. Williams said he looked into the boyfriend's background at the request of Ms. Beason, and found that he was an "ex convict" who was pretending to have military experience in order to impress other people. Mr. Williams said this led him to try to damage the boyfriend's vehicle with the explosive devices.

When pressed for details on the explosive incidents, Mr. Williams could not remember everything about the May 12th incident, but said it was a firework and he dropped it in the middle of the street near Ms. Beason's residence. He said the June 7th device was also a firework like a large bottle rocket, and that he lit it in the middle of the street. He described the June 9th device, and said that he had tried placing it by Ms. Beason's sister's boyfriend's truck

by lighting it and dropping it out the window of his car. He thought he ran over it as he drove away, and said he knew it was not going to go off at that point. He said the point of the June 9th device was to annoy the boyfriend because he was lying about being in the military. Mr. Williams also said that he knows it was a stupid thing to do, and he did not intend to actually hurt anyone. He consented to a search of his truck, and told the agents a firearm was inside of it. A loaded Ruger 9 mm pistol was found in the truck. Mr. Williams was very upset, said his life was over, and made further statements suggesting he was feeling suicidal.

Mr. Williams' wife was also interviewed nearby during execution of the search warrant. She stated that Mr. Williams occasionally drove her vehicle (the one that matched the vehicle from camera footage), that Mr. Williams had a difficult childhood, and that she believed he had a problem with using drugs. She said they had previously owned a FedEx route, and that Mr. Williams' mental health deteriorated and he started using methamphetamine after one of their employees had an accident where another driver was killed and the employee had both feet amputated. They sold the FedEx route after the accident. She knew Mr. Williams had purchased fireworks and had set one off for their children the night before, but was unsure if he was capable of making fireworks on his own, and had not seen any fuses. She said Mr. Williams had a handgun he kept in his work truck affixed to a magnet, and that there might be bullets in a shelf in their safe in the home. She indicated that Mr. Williams was currently working for Integral Delivery, and he had a hard time maintaining employment since they sold the FedEx route. She said they still owned a truck from their FedEx route, and gave consent to search the delivery truck. She confirmed that Mr. Williams has a sister that had a methamphetamine problem, but that she had last known the sister to be in town a few years prior.

She noted that Mr. Williams had previously completed a residential treatment program through the Veteran's Administration in 2018, and that she believed his participation in that program again would be beneficial for him to get help for his own problems.

A federal criminal complaint was obtained that same day, and Mr. Williams arrested. On June 23, 2021, law enforcement officers obtained a search warrant for hair and urine samples for Mr. Williams. They executed the warrant on June 25, 2021, at the Polk County Jail, and Mr. Williams was cooperative with the execution. The urine specimen was subsequently analyzed and found to contain methamphetamine.

**DEFENSE PROFFERS**

Sara Glenn of the Veteran's Administration Central Iowa Health Care System Community Resource and Referral Center has obtained records and had Mr. Williams interviewed and evaluated for VA services. Based on his medical records, interview, and his prior military service, Ms. Glenn indicates that Mr. Williams has been accepted to the VA's residential program, and could be placed in the residential program on next bed availability. She indicates that the program would include residence on site, and that mental health and substance abuse treatment would be part of the program designed for Mr. Williams' needs. While the facility is not locked, the program coordinators would contact pretrial services if Mr. Williams left the facility without appropriate authorization. She also indicates that the VA will coordinate with the pretrial services office regarding any additional conditions of release the Court may require, such as electronic monitoring, but that the staff at the facility are obviously not empowered to enforce court orders themselves and can only communicate any issues or concerns to the pretrial services office that might arise. The program is six weeks long, at which

point Mr. Williams would be expected to transition to other housing outside of the facility.[2]  Ms. Glenn notes that due to the continuing COVID-19 pandemic and related health concerns, outside visitors of any kind are currently not allowed on-site at the facility (which would include pretrial services officers), and that program participants are not currently leaving the facility.  However, she indicates that veterans in the program can be made available for virtual or video visits and phone calls.

    Chad Williams would proffer that he does wish to participate in the VA residential program, and understands that upon successful completion of the program he would have to find other approved housing, or could even be returned to custody at the Polk County Jail.  He agrees to abide by any conditions of release imposed on him by the Court, and would abide by the rules of the VA residential program and comply with all treatment recommendations.  He is receptive to mental health and substance abuse treatment both through the VA program and as part of any continued pretrial release later authorized by the Court.  He is 46 years old, and his wife and two minor children reside in Johnston, Iowa.  He served in the Navy, where he attended technical school for engineering.  Mr. Williams acknowledges that he struggles with depression, and would take any necessary psychiatric medications for the condition if deemed necessary through evaluation and treatment.  He further acknowledges using methamphetamine in the past, and welcomes any treatment for that problem.  He has spent many years working in the delivery and

---

[2] John Williams, Mr. Williams' brother, would proffer that in the future Mr. Williams could reside with him and his husband in their home in Grimes after graduation from the VA residential program, and if approved and ordered by the Court and pretrial services.  John Williams notes that he works from his home, which would allow him to monitor his brother at all times.  John Williams would agree to be a third-party custodian for Mr. Williams, if Mr. Williams advances to this point in his pretrial release.  John Williams and his spouse would work with pretrial services to make sure their home is approved, and to make any adjustments or precautions deemed necessary for its approval.

shipping business, including running his own company in that field, and believes he could find employment if released from custody in the future. He would maintain contact with the Court, pretrial services, and his attorney as directed while participating in the VA residential program, and thereafter.

**ARGUMENT**

Chad Williams is a military veteran who has clearly been going through a difficult time over the past few years. The circumstances surrounding the allegations in the case and his mental health and substance use problems, all intertwine and have led him to his current situation. But he has strong ties to the community, and a support system in place in the community through his wife, children, his brother and his husband, and the resources of the VA system that are being made available to help him. He has previously participated in VA services with success in the past, and believes the system can help him again now.

Obviously, this is an unusual case with atypical factual allegations, and any sort of explosive device case raises serious concerns about the safety of the community.[3] Indeed, the pretrial services offices recommends continued detention despite the availability of the VA residential program, due to its concerns about potential danger to the community. But Mr. Williams has minimal criminal history, and there is no reason to believe he intends to run from the charges in this case. Indeed, he made admissions related to his offense conduct when interviewed by law enforcement agents, and his immediate family all reside in the local area.

---

[3] The firearm charge in this case is, arguably, less concerning in regard to danger to the community concerns, as Mr. Williams' possession of a firearm was clearly meant for protection. The firearm was also owned pursuant to a permit, Mr. Williams has training in firearms, and he is only alleged to be prohibited due to his use of illegal substances rather than based on prior criminal convictions.

Additionally, any concerns about danger to the community can be sufficiently mitigated by the conditions of release available for the Court to impose.

Furthermore, releasing Mr. Williams to participate in the residential program at the VA will reasonably assure the safety of the community. While the facility is not locked, it is essentially currently on de-facto lockdown due to the COVID-19 pandemic, and the staff monitors the participants and would notify pretrial services if Mr. Williams were to leave the campus without permission. The program has both substance abuse and mental health treatment tailored to Mr. Williams' individual needs, which he has indicated he welcomes. The facility will work with pretrial services in regards to other conditions of release, such as if electronic or other GPS monitoring is required. The report from pretrial services seems to suggest some concern about unmonitored internet access on site, but to the extent there is a concern about Mr. Williams attempting to craft destructive devices, the lack of access to materials for such devices is more important than the ability to potentially accrue knowledge about explosives via the internet.

The VA residential program will provide a higher degree of security sufficient to reasonably protect the community while Mr. Williams is fully assessed, and his rehabilitative and correctional needs are addressed. The VA residential program can do so better than continued incarceration at the jail where no such programming is currently available. The program will also provide the Court with a good benchmark for assessing whether Mr. Williams should be returned to the jail or permitted to seek alternative housing with his brother or other plan, after he completes the residential program. While the allegations in the case are serious, any concerns about danger to the community can be sufficiently addressed through this program,

and thereafter if Mr. Williams is later allowed to transition from there back into the community. Given all the circumstances, there are conditions of release available that will reasonably assure Mr. Williams' appearance as required for future proceedings, and that will reasonably assure the safety of the community if he were to be released pending trial in this case.

        Respectfully Submitted,

        */s/ Joseph D. Herrold*
        Joseph D. Herrold
        Assistant Federal Defender
        FEDERAL PUBLIC DEFENDER'S OFFICE
        400 Locust Street, Suite 340
        Des Moines, Iowa 50309-2353
        PHONE: (515) 309-9610
        FAX: (515) 309-9625
        E-MAIL: joe_herrold@fd.org
        ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

    I hereby certify that on August 30, 2021, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

        */s/ Morgan Conn*, Paralegal